UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASHFIELD HEALTH LLC, *Plaintiff*, v. MATTHEW JACOBSON, *et al.*, *Defendants*. | No. 3:21-cv-00417 (VAB) |

**RULING AND ORDER ON MOTION TO STAY ORDER AND REINSTATE INJUNCTION**

Ashfield Health LLC ("Ashfield," the "company," or "Plaintiff") has sued Matthew Jacobson ("Defendant"), a former executive of the company. Ashfield seeks to have the Court stay its order denying in part and granting in part the company's motion for a temporary restraining order and preliminary injunction. Expedited Mot. to Stay Order and Reinstate Inj., ECF No. 95 (July 22, 2021) ("Mot. to Stay"). In its ruling, the Court ordered that Mr. Jacobson would be permitted to work for Ashfield's competitor but that he would be required to return to Ashfield all proprietary information still in his possession. Ruling and Order on Mot. for TRO and Prelim. Inj., ECF No. 90 (July 1, 2021) ("Order").

For the reasons stated below, Ashfield's motion to stay is **GRANTED in part and DENIED in part**. Mr. Jacobson shall be permitted to work for Ashfield's competitor. But, in addition to returning to Ashfield all proprietary information still in his possession, Mr. Jacobson is further ordered to refrain from using any of Ashfield's trade secrets or contacting any of Ashfield's customers.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The Court assumes familiarity with the facts of the case. *See* Order.

The Court notes that since it ruled on Ashfield's motion for a temporary restraining order and preliminary injunction, neither party has provided any factual developments in the case. Notably, neither party has indicated that Mr. Jacobson has failed to return Ashfield's proprietary information, that Mr. Jacobson used any of Ashfield's proprietary information, or that Ashfield has suffered an economic harm because Mr. Jacobson works for its competitor.

### B. Procedural Background

On March 25, 2021, Ashfield filed its Complaint seeking to enjoin Mr. Jacobson from working for Helios and the return of any of Ashfield's proprietary information. Compl. ¶ 7, ECF No. 1 (Mar. 25, 2021).

On the same day, Ashfield filed a motion for a temporary restraining order and preliminary injunction. Pl.'s Emergency Mot. for Order to Show Cause Seeking Temporary Restraints & Prelim. Inj., ECF No. 3 (Mar. 25, 2021) ("Pl.'s Mot.").

On March 30, 2021, a telephonic status conference was held. Min. Entry, ECF No. 19 (Mar. 30, 2021).

On April 21, 2021, Ashfield filed a joint motion for a discovery conference. Joint Mot. for Disc. Conference, ECF No. 28 (Apr. 21, 2021).

On April 22, 2021, the Court granted the motion for a discovery conference. Order, ECF No. 32 (Apr. 22, 2021).

On April 22, 2021, Ashfield filed a motion to compel discovery from Apollo Medical Communications, Inc. Pl. Ashfield Health LLC's Mot. Compelling Disc. from Non-party Apollo

Medical Communications, Inc., ECF No. 36 (Apr. 22, 2021); Pl. Ashfield Health LLC's Mem. in Supp. of Compelling Disc. from Non-party Apollo Medical Communications, Inc., ECF No. 37 (Apr. 22, 2021); Decl. of Rebecca A. Brazzano, Esq. in Supp. of Pl. Ashfield Health LLC's Mem. in Supp. of Compelling Disc. from Non-Party Apollo Medical Communications, Inc., ECF No. 38 (Apr. 22, 2021).

On the same day, Apollo filed its response to Ashfield's motion to compel. Br. of Non-party Apollo Medical Communications, Inc., in Supp. of Its Obj. to Pl.'s Subpoena, ECF No. 39 (Apr. 22, 2021).

On April 23, 2021, the Court held a discovery conference. Min. Entry, ECF No. 42 (Apr. 23, 2021).

On the same day, the Court denied the motion to compel without prejudice to renewal following the forthcoming evidentiary hearing. Order, ECF No. 43 (Apr. 23, 2021).

Also on that day, Mr. Jacobson filed his opposition to Ashfield's motion for a temporary restraining order and preliminary injunction, Def.'s Mem. of L. in Opp'n to Pl.'s Mot. for Order to Show Cause, ECF No. 44 (Apr. 23, 2021), along with a motion to seal the brief, Def.'s Mot. to Seal, ECF No. 45 (Apr. 23, 2021), and an unredacted version of the opposition.

On April 25, 2021, the Court granted Mr. Jacobson's motion to seal. Order, ECF No. 47 (Apr. 25, 2021).

On May 12, 2021, Ashfield replied to Mr. Jacobson's response to the motion for a temporary restraining order and preliminary injunction. Pl. Ashfield Health LLC's Reply Mem. in Further Supp. of Mot. for TRO & Prelim. Inj., ECF No. 52 (May 12, 2021); Pl. Ashfield Health LLC's Reply Mem. in Further Supp. of Mot. for TRO & Prelim. Inj., ECF No. 54 (May 12, 2021).

On May 13, 2021, the Court granted Ashfield's motion to seal its memorandum in further support for temporary restraining order. Order, ECF No. 56 (May 13, 2021). The Court also issued an order giving the parties until 5:00 p.m. on May 14, 2021 to file their witness and exhibit lists, in preparation for the evidentiary hearing scheduled for May 17, 2021. Order, ECF No. 55 (May 13, 2021).

On May 17, 2021, the Court held an evidentiary hearing regarding the pending motion for a temporary restraining order and preliminary injunction. Min. Entry, ECF No. 61 (May 17, 2021)

On May 28, 2021, Ashfield filed an Amended Complaint. Am. Compl., ECF No. 65 (May 28, 2021).

On June 2, 2021, the Court recommenced the evidentiary hearing regarding the pending motion for a temporary restraining order and preliminary injunction. Min. Entry, ECF No. 71 (June 2, 2021).

On June 11, 2021, Ashfield filed its written closing arguments for the evidentiary hearing. Ashfield Health LLC's Closing Arg. for the Evidentiary Hr'g on its Mot. for Prelim. Inj. & TRO, ECF No. 81 (June 11, 2021).

On the same day, Mr. Jacobson filed his written closing arguments for the evidentiary hearing. Def. Matthew Jacobson's Post-Hr'g Br. in Opp'n to Pl.'s Mot. for Order to Show Cause, ECF No. 83 (June 11, 2021) ("Def.'s Closing").

On July 1, 2021, the Court issued its Ruling and Order denying in part and granting in part Ashfield's motion for a temporary restraining order and preliminary injunction. Order.

On July 22, 2021, Ashfield filed its expedited motion to stay order and reinstate injunction. Mot. to Stay; Pl. Ashfield Health LLC's Mem. of Law in Supp. of Mot. to Stay Order and Reinstate Inj., ECF No. 95-1 (July 22, 2021) ("Ashfield Mem.").

On July 28, 2021, Mr. Jacobson filed his opposition to Ashfield's motion to stay order and reinstate injunction. Def. Matthew Jacobson's Mem. in Opp'n to Pl.'s Expedited Mot. to Stay Order and Reinstate Inj., ECF No. 100 (Aug. 12, 2021) ("Def. Mem.").

On August 26, 2021, Ashfield replied to Mr. Jacobson's response to Ashfield's motion to stay order and reinstate injunction. Pl. Ashfield Health LLC's Reply Mem. in Further Support of its Expedited Mot. to Stay and Reinstate, ECF No. 102 (Aug. 26, 2021) ("Ashfield Reply").

## II.     STANDARD OF REVIEW

In determining whether a stay is appropriate pending appeal, courts in the Second Circuit consider four factors: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 38–39 (2d Cir. 1993) (internal quotations marks omitted) (explaining why movant was not entitled to a stay "even if it had complied with [proper appellate procedure under Fed. R. App.] 8"); *see also Mitchell v. City of New Haven*, 854 F. Supp. 2d 238, 255 (D. Conn. 2012) (denying stay after evaluating the four *Hirschfield* factors).

"[A] stay 'is not a matter of right, even if irreparable injury might otherwise result'; rather, a stay is 'an exercise of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion.'" *New York v. U.S.*

*Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

"Although the weighing of these factors is flexible and within the Court's discretion, the movant's burden of establishing a favorable balance of these factors is a heavy one and more commonly stay requests will be denied." *Optimum Shipping & Trading, S.A. v. Prestige Marine Servs. PTE. LTD.*, 613 F. Supp. 2d 502, 503 (S.D.N.Y. 2009) (internal quotations and citation omitted). The Second Circuit has recognized that, after the district court has ruled on a request for an injunction, "[t]o obtain a stay of a district court's order pending appeal, more is required, including a 'strong showing that [the movant] is likely to succeed on the merits.'" *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 180 (2d Cir. 2020) (quoting *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020)).

The Second Circuit has further emphasized that "[a]n award of an injunction is not something a plaintiff is entitled to as a matter of right, but rather it is an equitable remedy issued by a trial court, within the broad bounds of its discretion, after it weighs the potential benefits and harms to be incurred by the parties from the granting or denying of such relief." *Tico Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999) (citing *Yakus v. United States*, 321 U.S. 414, 440 (1944)). According to the Second Circuit, "[a]n order involving injunctive relief will not be reversed unless it is contrary to some rule of equity or results from a discretion improvidently exercised. In other words, such an order is subject to reversal only for an abuse of discretion or for a clear error of law." *Id.* (citations omitted).

**III.   DISCUSSION**

The Court first addresses the question of whether it can consider this motion. Mr. Jacobson argues that this motion should be denied because it is "a procedurally improper motion

6

for reargument, filed without leave of the appellate court." Def. Mem. at 1–2. The Court, however, has jurisdiction to consider an application for stay of a judgment in the first instance. *See Hirschfeld*, 984 F.2d at 38 ("Rule 8(a) of the Federal Rules of Appellate Procedure specifies that an application for a stay of a judgment or order must generally be made first to the district court.").

The Court notes that Federal Rule of Civil Procedure 62(d) is most often applied to stay payment of fees awarded to a party. *See In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) ("Rule 62(d) provides that an appellant is entitled to a stay pending appeal by posting a supersedeas bond."); *Cohen v. Metro. Life Ins. Co.*, 334 Fed. Appx. 375, 378 (2d Cir. 2009) (summary order) (stating that "[t]he purpose of the rule, which applies to any appealable order requiring payment, is to ensure 'that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed.'" (quoting *Cleveland Hair Clinic, Inc. v. Puig*, 104 F.2d 123, 125 (7th Cir. 1997)).

A court in this District, however, has applied the earlier version of this rule, with nearly identical language, to a request to stay a preliminary injunction pending appeal. *See Appel v. Spiridon*, No. 3:06CV1177 (SRU), 2006 WL 3825027 at *2 (D. Conn. Dec. 21, 2006) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also* 11 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. 2d § 2904 ("Amendments to the Rule in 2018 moved that provision to a new subdivision (d). No substantive change was made.").

In any event, the Court finds that none of the factors it must consider in deciding whether to stay the Court's Order, ECF No. 90, favors a stay.

### A. Irreparable Injury to Ashfield

Ashfield argues that it will suffer irreparable harm as a result of the Court's Order, because the Court "failed to enjoin [Mr.] Jacobson from contacting Ashfield's customers for any time at all" and because Mr. Jacobson "has *already* disclosed Ashfield's Trade Secrets." Ashfield Mem. at 7–8. Ashfield emphasizes that "disclosure of trade secrets and breach of a non-compete agreement are quintessentially considered irreparable harm." *Id*. at 7 (citing *MacDermid, Inc. v. Selle*, 535 F. Supp. 2d 308, 317 (D. Conn. 2008).

Ashfield also alleges that "failure to stay enforcement of the Order will effectively moot any appeal" because Mr. "Jacobson's further inevitable use or disclosure of the Trade Secrets cannot be remedied even by reversal on appeal." *Id*. at 8. According to Ashfield, because "[d]isclosure of a trade secret destroys its protection," *id*. (citing 18 U.S.C. § 1893(3), Conn. Gen. Stat. § 35-51(d)), "the Second Circuit, even in reversing this Court's Order, would not be able to fashion relief because it cannot put Ashfield back in a position it would have been if Jacobson was not employed by Helios during the pendency of the Appeal." *Id*. Ashfield states that "[c]ourts in this Circuit recognize that an ex-employee's competitive employment will inevitably cause disclosure of trade secrets." *Id*. at 8 (citing to *Branson Ultrasonics Corp. v. Stratman*, 921 F. Supp. 909, 913–14 (D. Conn. 1996)).

Finally, the company argues that the Court's "Order not only denies Ashfield's [m]otion, but it goes further and denies Ashfield's right to a jury in granting an improper legal blessing for Jacobson to work for one of Ashfield's direct competitors." *Id*. at 7.

According to Mr. Jacobson, Ashfield's arguments are a "rehash [of] the same arguments that it put forth in support of its injunction motion—arguments this Court already rejected." Def. Mem. at 13.

The Court agrees, in part.

The Court's Order already addressed the question of harm. After considering all evidence submitted by the parties, the Court concluded that any harm Ashfield claims to have suffered was "speculative," and not "imminent" as required by caselaw. Order at 22. The Court also concluded that "[i]rreparable harm is an 'injury for which a monetary award cannot be adequate compensation,'" and that "Ashfield could be entitled to monetary relief for proven economic injuries" *Id.* at 20, 22 (quoting *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995)).

Contrary to the Court's earlier conclusion, "[t]he loss of trade secrets cannot be measured in money damages," *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 62–63 (2d Cir. 1984) (concluding that "[a] narrowly drawn injunction should [ ] have been issued based on the misappropriation of trade secret and breach of confidentiality agreement claims"). As in *Westport Res. Mgmt. v. DeLaura*, No. 3:16-cv-973 (VAB), 2016 U.S. Dist. LEXIS 81586, at *11 (D. Conn. June 23, 2016), this Court again acknowledges that "'when a party violates a non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm,'" *id.* (quoting *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004)), and that "'irreparable harm may be assumed in cases where the plaintiff alleges a breach of a restrictive covenant,'" *id.* (quoting *United Rentals, Inc. v. Bastanzi*, No. 3:05-cv-596 (RNC), 2005 WL 5543590, at *8 (D. Conn. Dec. 22, 2005)).

But, contrary to Ashfield's claims, the company has yet to provide evidence indicating that Mr. Jacobson has used its trade secrets. The Court carefully considered any evidence of Mr. Jacobson's alleged use of trade secrets during the hearings related to Ashfield's motion for a temporary restraining order and preliminary injunction, when the Court admitted sixty-nine exhibits into evidence and heard testimony from three witnesses. Min. Entry, ECF No. 61 (May 17, 2021); Min. Entry, ECF No. 71 (June 2, 2021). Ashfield also has not filed any additional

information with the Court indicating that it has found new evidence that Mr. Jacobson used its trade secrets.

As to Ashfield's claim that the Court's Order denied the company's "right to a jury in granting an improper legal blessing for [Mr.] Jacobson to work for one of Ashfield's direct competitors," the Court notes, that by virtue of denying the injunction, Mr. Jacobson would naturally be permitted to continue his employment at Helios.

Despite reversing its previous conclusion on irreparable harm, a stay will not be issued. "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken,* 556 U.S. at 434 (citation omitted).

In any event, Mr. Jacobson is further ordered to refrain from using any of Ashfield's trade secrets or contacting any of Ashfield's customers.

### B. Substantial Injury to Mr. Jacobson

According to Ashfield, Mr. Jacobson will suffer only "*de minimis* [harm] compared to the substantial harm that will befall Ashfield if this matter is not stayed." Ashfield Mem. at 8. Specifically, it alleges that Mr. Jacobson's "feigned claim that he cannot obtain any employment, anywhere, for any entity despite never seeking non-competitive employment" is "not credible, nor [ ] legally sufficient to overcome the actual, direct and immediate injuries being suffered by Ashfield as a result of the Court's Order." *Id*. at 9. Ashfield further notes that "[i]t appears that Helios remains in business despite [Mr.] Jacobson purportedly doing no work for them or Apollo during the three months he sat out from employment[.]" *Id*. at 8.

Mr. Jacobson alleges that a stay would "unduly [a]ffect [his] ability to pursue his livelihood," Def. Mem. at 15, and notes that Ashfield's argument "is the exact opposite of the

Court's [earlier] balancing of the equities, yet the Plaintiff has put forth no additional or new facts or arguments showing that it would be harmed absent a stay." *Id.* According to Mr. Jacobson, Ashfield's focus on Helios' ability to remain in business during his three-month leave is "irrelevant . . . and ignores the very real and substantial harm that Mr. Jacobson himself would suffer were the Court to order a stay and injunction." *Id*.

The Court agrees.

The Court has already concluded that the Agreement "w[ould] have an undue effect on Mr. Jacobson's ability to pursue his livelihood." Order at 15–16 (citing *Prezio Health Inc. v. Schenk*, No. 3:13-CV-01463 (WWE), 2016 WL 1367726, at *4 (D. Conn. Apr. 6, 2016)). Ashfield has not provided any new information to show that Mr. Jacobson will not suffer substantial injury, and Helios's ability to remain in business does not reflect the financial loss that Mr. Jacobson would suffer from not being allowed to continue working for Helios.

The Court therefore finds that Mr. Jacobson would suffer substantial injury if the motion to stay were granted.

### C. Ashfield's Possibility of Success on Appeal

Ashfield claims that "each basis for appeal presents a substantial possibility of success." Ashfield Mem. at 11. The four bases are:

> (1) the Order committed clear error when it made a factual determination that [Mr.] Jacobson could not pursue his livelihood without being employed by a sole competitor of Ashfield, Helios; (2) the Order misinterpreted the law when it determined that Ashfield was required to present a sufficient quantum of proof of damages; (3) the Order misinterpreted the law by concluding, as a matter of law, what should be an issue of fact left to the jury of whether [Mr.] Jacobson may be employed by Helios in violation of his restrictive covenant; and (4) the Order is erroneously fashioned in that it directly authorizes [Mr.] Jacobson to work for Helios, a non-party to this action and not subject to this Court's jurisdictional reach, but does not account for the US entity and defendant Apollo,

11

>who is also a competitor of Ashfield, and the entity created by [Mr.] Jacobson and Helios to compete with Ashfield.

*Id*. at 10–11.

### 1. Mr. Jacobson's Alleged Failure to Mitigate Damages

Regarding the first basis for appeal, Ashfield alleges that "it was clear error to make the factual determination that Helios was [Mr.] Jacobson's only option to pursue a living," *id*. at 12, because "there was substantial unrebutted evidence that other employment exists for [Mr.] Jacobson that he chose not to pursue," *id*. at 11–12. The company emphasizes that Mr. Jacobson "failed to mitigate his damages by even attempting to work somewhere other than [with] a competitor." *Id*. at 11.

Mr. Jacobson points to "substantial evidence support[ing] the Court's finding that enforcement of the non-compete would have an undue effect on Mr. Jacobson's ability to pursue his livelihood." Def. Mem. at 10. The evidence includes the legal costs that Mr. Jacobson has incurred as a result of this lawsuit, the effects on his household if he were unable to work, and the limitations on finding employment "commensurate with his experience" in a different industry. *Id*. According to Mr. Jacobson, there was more than sufficient evidence to support the Court's conclusion that "'the balance of the hardships tips in favor of Mr. Jacobson[.]'" *Id*. (quoting Order at 16).

The Court agrees.

One of the factors in the standard for a preliminary injunction is "whether [the] balance of the equities weigh in favor of Ashfield[.]" Order at 11 (citing *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)). In its Order, the Court held that "'the balance of hardships tips in favor' of Mr. Jacobson, because 'were a preliminary injunction to be granted, [Mr. Jacobson] would lose his job." *Id*. at 16 (quoting *Tyco Healthcare Grp. LP v. Ross*, 3:11-cv-373 (CFD), 2011 WL

1790186, at *5 (D. Conn. May 10, 2011). In so holding, the Court cited to *Prezio Health Inc.*, 2016 WL 1367736, at *4, which states that "[t]he interests of the employee himself must also be protected and a restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family."

Based on its review of the evidence, the Court continues to hold that a preliminary injunction would cause Mr. Jacobson to lose his executive role in medical communications, thus preventing him from pursuing his occupation, and that this potential loss tips the balance in Mr. Jacobson's favor. *See Tyco*, 2011 WL 1790186, at *5 (finding that the balance of the equities weighed in favor of the former employee because, although the former employer was willing to continue compensating the former employee, "such an arrangement would nevertheless take [the former employee] out of the dynamic, competitive field of biomedical engineering for a period of years").

### 2. Ashfield's Burden

Ashfield alleges that, by "conflat[ing] separate issues of law concerning Ashfield's breach of contract and misappropriation of trade secrets claim," the Court "held [it] to a misapplied higher legal standard [for] demonstrating irreparable harm." Ashfield Mem. at 12.

According to Ashfield, "[a] breach of a non-compete agreement is a standalone, sufficient basis to acquire a preliminary injunction, assuming the additional traditional factors are satisfied." *Id*. "Assuming the enforceability of the non-compete at issue, proof that the defendant is employed or will imminently be employed by a competitor is all that is required to prove a breach and irreparable harm." *Id.* at 13.

As to the misappropriation of trade secrets claim, Ashfield alleges that "proof of economic damages is not required to succeed" and "all that is necessary is proof of irreparable

harm or proof of imminent irreparable harm," which "may be satisfied by competent proof that the trade secret was misappropriated in the first place." *Id*.

Mr. Jacobson argues that "the Court did not require a 'quantum of proof of damages' in concluding that Plaintiff did not meet its burden of showing irreparable harm." Def. Mem. at 11. He further notes that "the Court determined that the evidence presented showed only that the alleged harm to the Plaintiff was speculative, and that, if the Plaintiff is harmed, monetary damages would provide a sufficient remedy." *Id*.

The Court agrees, in part.

As mentioned above, the Court recognizes that "[t]he loss of trade secrets cannot be measured in money damages," *FMC Corp.*, 730 F.2d at 62–63, and "'irreparable harm may be assumed in cases where the plaintiff alleges a breach of a restrictive covenant,'" *Westport Res. Mgmt. v. DeLaura*, 2016 U.S. Dist. LEXIS 81586, at *11. Proof of economic damages, therefore, was not required for Ashfield to succeed on either its non-compete claim or its trade secrets claim.

As to the non-compete claim, even if the Court concludes that irreparable harm may be assumed, a finding of irreparable harm alone would not reverse the Court's denial of the motion for a temporary restraining order and preliminary injunction preventing Mr. Jacobson from working for Helios. Irreparable harm is but one of four inquiries in the standard for a preliminary injunction in the enforcement of a restrictive covenant.

Regarding the trade secrets claim, the Court does not agree that "all that is necessary is proof of irreparable harm or proof of imminent irreparable harm." The applicable standard, as stated in the Court's Order, is:

> The court may grant a motion for temporary restraining order if the moving party demonstrates a risk of irreparable harm and either a) a

14

> likelihood of success on the merits or b) the existence of sufficiently serious questions going to the merits to make them a fair ground for litigation and balance of hardships decidedly favoring the party requesting the relief.

*Ward v. Thomas*, 895 F. Supp. 401, 403 (D. Conn. 1995) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)); *see also Local 1814, Int'l Longshoremen's Ass'n AFL-CIO v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (establishing that the same standard is applied to motions for temporary restraining order and preliminary injunctions).

The Court also clarifies that it does not find Mr. Jacobson to have misappropriated trade secrets as defined in the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50 et. Seq., and Ashfield is therefore unlikely to succeed on the merits of its trade secrets claim. Specifically, there is an absence of evidence in this record that Mr. Jacobson "disclos[ed] or use[d] the trade secret of another without express or implied consent[.]" Conn. Gen. Stat. § 35-51. Contrary to the cases that Ashfield cites, Mr. Jacobson has also not admitted to either using or disclosing, or planning to use or disclose, confidential material. *Cf. Entegee, Inc. v. Korwek*, No. 3:15-cv-1087 (VLB), 2015 U.S. Dist. LEXIS 118263, at *2 (D. Donn. Sept. 4, 2015) ("Korwek testified (i) the reason he downloaded the documents was because he was concerned about leaving Entegee and wanted to help ensure that he would be successful in his new position[.]"); *Westport Res. Mgmt., Inc.*, 2016 WL 3546218, at *2 (finding that the former employee began soliciting his former employer's clients as soon as he began working at another company). And, under the parties' Employment Agreement, Mr. Jacobson is "not [ ] restricted from using his general knowledge or his unaided memory as a result of viewing Confidential Information." Employment Agreement, Ex. B to Def.'s Mem. of L. in Opp'n to Pl.'s Mot. for Order to Show Cause, ECF No. 44-3, at 5 (Apr. 23, 2021).

15

The Court therefore does not find a substantial possibility of success for Ashfield on this argument.

In any event, as noted above, the Court further orders that Mr. Jacobson not use any of Ashfield's trade secrets or contact any of Ashfield's customers.

### 3. Apollo's Liability

As to the third basis, Ashfield claims that the Court "prematurely determined Apollo's liability" by holding that Mr. Jacobson "shall be permitted to work for Ashfield's competitor." Ashfield Mem. at 15. This conclusion, Ashfield says, "invade[d] the province of the jury on an ultimate question of fact" from Ashfield's Amended Complaint, which was filed before the Order issued and "states claims for tortious interference with Jacobson's Agreement against Apollo." *Id*.

The Court did not determine any liability as to Apollo, so Ashfield does not face a substantial possibility of success on this claim. *See Entegee, Inc.*, 2015 U.S. Dist. LEXIS 118263, at *18–19 ("[Although] the injunction seeks to restrain [the former employee], from pursuing employment with [the new employer], it does *not* require [the new employer] to terminate, or do anything else with respect to [the former employee]."). Ashfield's motion for a temporary restraining order and preliminary injunction concerned Mr. Jacobson, and the Court has only ruled regarding whether Mr. Jacobson should be enjoined from working for a competitor.

### 4. Competitive Employment With an Extra-Jurisdictional Competitor

Finally, Ashfield alleges that the Court erred in permitting Mr. Jacobson's employment with Helios because it does not have jurisdiction over Helios, a United Kingdom-based company and therefore cannot "bless[ ] a foreign company's employment activity." Ashfield Mem. at 16.

For the same reason that the Court did not require anything of Apollo, the Court too did not exercise jurisdiction over Helios.

### D. Public Interest

Ashfield provides two reasons why it is in the public interest to enjoin Mr. Jacobson during the appeal. First, it claims that the Second Circuit "will answer whether it is clear error to vitiate a non-compete agreement despite admitted breach where [Mr.] Jacobson admits that he failed to seek non-competitive employment merely because he has worked in the field for a significant amount of time." *Id.* at 16–17. Second, Ashfield argues that "the public has an interest in the certainty with which they enter into contractual agreements." *Id*. at 17.

Mr. Jacobson argues that this case instead "presents questions on the enforceability of a non-compete and whether the Court abused its broad discretion in determining that enforcing the covenant would be inequitable." Def. Mem. at 16.

The Court agrees.

Failure to seek non-competitive employment would not reverse this Court's ruling on the motion for a temporary restraining order and preliminary injunction. The Court's focus is on whether the preliminary injunction would cause Mr. Jacobson to lose his executive role in medical communications. Moreover, an outcome that unnecessarily deprives Mr. Jacobson of his ability to pursue his occupation is not in the public interest. To the extent that there is a public interest in enforcing contractual agreements, *see Beacon Ins. & Inv. Grp. LLC v. Panzo*, No. CV146044992S, 2016 Conn. Super. LEXIS 2073, at 8 (Conn. Super. Ct. July 25, 2016) (citing *Collins v. Sears, Roebuck & Co.*, 164 Conn. 369, 377 (Conn. 1973) ("It is the general rule that competent persons shall have the utmost liberty of contracting and that their agreements, voluntarily and fairly made, shall be held valid and enforced in the courts.")), there also is a

public interest in a person not being forced to lose their job when the party seeking the injunction has not demonstrated a hardship. *See Tyco*, 2011 WL 1790186, at *5 ("Given the speculative nature of any hardship that would befall [the former employer] in the absence of a preliminary injunction, and the very concrete hardship [the former employee] would face were it to issue, the Court find[s] the balance of the hardships tips in [the former employee]'s favor.").

IV.   **CONCLUSION**

For the reasons stated above, Ashfield's motion to stay is **GRANTED in part and DENIED in part**. The Court will not stay its July 1, 2021 Order. But, in addition to returning to Ashfield all proprietary information still in his possession, Mr. Jacobson is further ordered to refrain from using any of Ashfield's trade secrets or contacting any of Ashfield's customers.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of January, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE